1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**

7          **DISTRICT OF NEVADA**

8    JULIANO ROASIO and FRANK            2:13-CV-362 JCM (PAL)
     ROSARIO,
9
             Plaintiff(s),
10
11   v.

12   CLARK COUNTY SCHOOL
     DISTRICT, et al.,
13
             Defendant(s).
14

15

16                          **ORDER**

17          Presently before the court is defendants', Clark County School District, Darrel Brown, Laurie

18   Evans, Eric Gygatz, Ron Isaacs, and Emil Wozniak, motion to dismiss.  (Doc. # 14).  Plaintiffs

19   Juliano and Frank Rosario filed a response in opposition (doc. # 20), and defendants filed a reply

20   (doc. # 24).  Plaintiffs then filed a sur-reply that the court has additionally considered as part of its

21   analysis.  (Doc. # 25).

22   **I.      Background**

23          Plaintiff Juliano Rosario is formerly a student at Desert Oasis High School.  His father is

24   Frank Rosario.  They have sued the school district and various employees of the school district.  The

25   school district employees sued by plaintiffs and their position at Desert Oasis High School are as

26   follows: Emil Wozniak, principal; Ron Isaacs, athletic director and assistant principal; Jim Dinkel,

27   athletic director; Darrel Brown, boys varsity basketball coach; Eric Gygatz, coach; and, Laurie

28

**James C. Mahan**
**U.S. District Judge**

Evans, coach (collectively, "school administrators"). (*See* doc. # 1, compl. at ¶¶ 2-10).

Juliano tried out for the school basketball team in the fall of 2012, his senior year. (*Id.* at ¶ 15). He was originally cut from the team. (*Id.* at ¶ 15). Frank protested his son being cut with coach Brown and other school administrators. (*Id.* ¶¶ 16-17). On or around December 4, 2012, Juliano was placed on the basketball team subject to certain conditions. (*Id.* at ¶¶ 17-18).

On or around February 7, 2013, the basketball team played its final game of the season. (*Id.* at ¶¶ 19-20). Following the game, in the evening and after school hours, the Rosario family went to dinner at a restaurant. (*Id.* at ¶ 20). The restaurant is off-campus. (*See id.* at ¶ 20). At the restaurant during dinner that evening, Juliano used the social networking site Twitter to post several "tweets" about school officials. These tweets are the primary subject of this lawsuit. (*Id.* at ¶ 22).[1]

In the days following Juliano's tweets, school officials, including Brown, Evans, Gygatz and Dinkel, filed a discipline complaint and victim impact statements against Juliano because of the tweets. (*See id.* at ¶ 24). School administrators charged Juliano with cyberbullying. (*Id.* at ¶ 27).

School administrators either suspended Juliano or expelled him subject to an appeal with the school board. (*See id.* at ¶ 28).[2] On or about February 27, 2013, the appeal panel modified Juliano's disciplinary punishment. (*Id.* at ¶ 29). The panel reassigned Juliano to a different high school in the school district, Sierra Vista High School. (*Id.* at ¶ 29).

Plaintiffs originally sought an injunction to force the school district to place Juliano back at Desert Oasis. At the hearing on the injunction, plaintiffs conceded that Sierra Vista High School and the school district permitted Juliano to make up all assignments upon enrollment and placed Juliano in the same or substantially similar classes. The reassignment did not affect Juliano's ability to graduate on time. The court denied the injunction finding no irreparable harm.

. . .

---

[1] Twitter is a social networking website that enables its users to "tweet" (*i.e.*–send a message) to the users' "followers" (*i.e.*–usually, the user's friends). The court goes into more detail about how Twitter works in section III.B *infra*.

[2] The complaint is not clear on the exact punishment originally implemented.

1  Based on the foregoing, plaintiffs filed the instant action alleging the following causes of
2  action: (1) 42 U.S.C. § 1983 violation of the First Amendment; (2) 42 U.S.C. § 1983 violation of the
3  Fourth Amendment; (3) 42 U.S.C. 1983 violation of equal protection; (4) 42 U.S.C. § 1983 violation
4  of 42 U.S.C. § 2000d *et seq*; (5) abuse of process/malicious prosecution; (6) intentional infliction
5  of emotional distress ("IIED"); (7) defamation and stigmatization plus; (8) civil conspiracy and
6  section 1983 conspiracy to violate civil rights; (9) denial of procedural due process as guaranteed
7  by the Fifth and Fourteenth Amendments; and, (10) assault and battery.

8  **II.    Legal Standard**

9  A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can
10 be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain
11 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*
12 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual
13 allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements
14 of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual
15 allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus,
16 to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim
17 to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

18 In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when
19 considering motions to dismiss. First, the court must accept as true all well-pled factual allegations
20 in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.
21 Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not
22 suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint
23 allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's
24 complaint alleges facts that allows the court to draw a reasonable inference that the defendant is
25 liable for the alleged misconduct. *Id*. at 1949.

26 Where the complaint does not "permit the court to infer more than the mere possibility of
27 misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief."

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

*Id.* (internal quotations and alterations omitted).  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**III.   Discussion**

As a preliminary matter, many of plaintiffs' claims are premised upon 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

The court will address each of the ten causes of action, both the federal claims pursuant to § 1983 and the state law claims, against the defendants in turn.

*A.     First Amendment*

Defendants argue that (1) Juliano's speech was obscene and therefore not entitled to First Amendment protection and (2) that schools may regulate off-campus student speech that causes a substantial disruption on-campus.  Plaintiffs counter that defendants violated Juliano's First Amendment rights when the defendants disciplined and punished him for the tweets he made at the restaurant following the final basketball game of the season.  Plaintiffs argue that Juliano's speech was not obscene and that the school exceeded its authority to regulate off-campus speech in this case.

James C. Mahan
U.S. District Judge

- 4 -

1   "[O]bscene material is unprotected by the First Amendment." *Miller v. California*, 413 U.S.
2   15, 23 (1973).  Speech is obscene if it meets each of the following three elements: (1) "whether the
3   average person, applying contemporary community standards would find that the work, taken as a
4   whole, appeals to the prurient interest"; (2) "whether the work depicts or describes, in a patently
5   offensive way, sexual conduct specifically defined by the applicable state law"; and, (3) "whether
6   the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24-25
7   (internal citations and quotations omitted).

8   While at dinner with his family the night after the last basketball game of the season, Juliano
9   tweeted about eight tweets.[3]  The tweets are as follows:

10      1.   "Mr. Isaacs is a b*tch too"

11      2.   "I hope Coach brown gets f*ck*d in tha *ss by 10 black d*cks"

12      3.   "Now I can tweet whatever I want and I hope one of y'all m*ther f*ck*rs snitch on me"

13      4.   "F*ck coach browns b*tch *ss"

14      5.   "Finally this b*tch *ss season is over"

15      6.   "Aiight I'm done y'all can go snitch now like before"

16      7.   "Oh yeah and Mr Dinkel's square *ss"

17
18      8.   "AND Ms. Evans b*tch *ss boyfriend [this is referring to defendant Gygatz] too He a p*ssy *ss n*gg* tryna talk sh*t while walking away"

19   The versions Juliano tweeted contains no filter or edits.  Tweet number two referenced above
20   cannot survive the motion to dismiss because it is obscene as a matter of law.  That statement
21   qualifies as obscene under formulation of the obscene speech rule because (1) applying contemporary
22   community standards it appeals to the prurient interest, (2) the tweet depicts or describes, in a

[3] The court judicially recognizes Juliano's tweets. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.  If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.").

James C. Mahan
U.S. District Judge

- 5 -

1   patently offensive way, sexual conduct specifically defined by the applicable state statute[4], and (3)

2   the tweet, taken as a whole, lacks serious literary, artistic, political, or scientific value.   Juliano

3   cannot recover for tweet number two referenced above and any protections afforded by the First

4   Amendment do not extend to that statement.

5           Defendants state that many of the tweets should not be afforded First Amendment protections

6   because the tweets are racist, violent, offensive, and hateful.   That may well be true.   However,

7   defendants' only arguments with supporting case law concern speech that falls outside the

8   protections of the First Amendment because the speech is obscene.   Juliano's tweets may be

9   offensive, but only tweet number two above is obscene as defined by the Supreme Court in *Miller*.

10  *Compare Snyder v. Phelps*, 131 S.Ct. 1207 (2011) (distinguishing between public and private speech

11  and discussing the First Amendment protections afforded to offensive public speech) *with Miller v.*

12  *California*, 413 U.S. 15 (1973) (defining obscene speech).[5]

13          The school administrators disciplined and punished Juliano under a cyberbullying statute for

14  all of the above referenced tweets, not for any tweet in particular.   It is well-established that schools

15  may discipline students for off-campus speech in certain situations.   *See, e.g., Kowalski v. Berkeley*

16  *Cnty. Schs.*, 652 F.3d 565 (4th Cir. 2011) (holding that a school did not violate a student's free

17  speech rights by suspending her for creating and posting to a webpage).   However, the Ninth Circuit

18  has never issued an opinion regarding off-campus and after-hours student speech on social media.

19

20          [4] NRS 201.235(4) states in relevant part:

21

22      "Obscene" means any item, material, or performance which:

23      (a) An average person applying contemporary community standards would find, taken as a whole, appeals to
        the prurient interest;

24

25      (b) Taken as a whole lacks serious literary, artistic, political or scientific value; and

26      . . . (c)(1) Depicts or describes in a patently offensive way ultimate sexual acts, normal or perverted, actual or
        simulated.

27

28          [5] The court will not decide, at this stage, if any of the tweets do not receive First Amendment protection because
        the tweets were offensive, racist, violent, or hateful.   Those arguments were not properly made to the court at this stage.

James C. Mahan
U.S. District Judge

- 6 -

1    The Ninth Circuit has hinted that it would be deferential to school administrators' decisions.  *See*

2    *Lavine v. Blaine Sch. Dist.*, 257 F.3d 981, 988 (9th Cir. 2001) ("In the school context, we have

3    granted educators substantial deference as to what speech is appropriate.")

4         Although the Ninth Circuit has not ruled on a factually similarly situation, other circuits have

5    addressed a school's ability to punish students for off-campus speech on social media websites.  The

6    test that has emerged from the circuit courts when considering off-campus student speech, including

7    online social networking speech, is that school officials have the authority to discipline students for

8    off-campus speech that will foreseeably reach the campus and cause a substantial disruption.  *S.J.W.*

9    *ex rel. Wilson v. Lee's Summitt R-7 Sch. Dist.*, 696 F.3d 771, 777 (8th Cir. 2012); *J.S. ex rel Snyder*

10   *v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011); *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d

11   565 (4th Cir. 2011); *Doninger v. Niehoff*, 527 F.3d 41, 48 (2d Cir. 2008); *Wisniewski v. Bd. of Educ.*

12   *of Weedsport Cent. Sch. Dist.*, 494 F.3d 34, 38-39 (2d Cir. 2007).  Some courts also require that a

13   sufficient nexus exist between the off-campus student speech and the disruption at school.  *See*

14   *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011).

15        Also, at issue in this case is NRS 388.135, which states:

16        A member of the board of trustees of a school district, any employee of the board of trustees,
          including, without limitation, an administrator, principal, teacher or other staff member, or
17        any pupil shall not engage in bullying, cyber-bullying, harassment or intimidation on the
          premises of any public school, at an activity sponsored by a public school or on any school
18        bus.

19        The district and circuit cases analyzing the reach of school administrators when disciplining

20   students for off-campus speech have come out both in favor of the students and in favor of the school

21   and school administrators.  It depends on the facts.  Additionally, the scope of NRS 388.135 has not

22   been interpreted in a situation like the instant case.  The court finds these issues are better left for

23   resolution on the merits.

24        The court finds that plaintiffs have stated a cause of action under § 1983 for First

25   Amendment violations as to Juliano's tweets sufficient to survive the motion to dismiss stage, with

26   the exception of the tweet the court excised *supra*.

27   . . .

28

James C. Mahan
U.S. District Judge
                                            - 7 -

1

      *B.*     *Fourth Amendment*

2

      Plaintiffs argue that the school and its administrators violated Juliano's Fourth Amendment

3

rights by searching his Twitter account.  The court disagrees and finds that Juliano has no reasonable

4

expectation of privacy in his tweets for the reasons stated *infra*.

5

      The Fourth Amendment guarantees that all people shall be "secure in their persons, houses,

6

papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A person

7

has a constitutionally protected reasonable expectation of privacy when he or she has both a

8

subjective expectation of privacy and that expectation is one that society recognizes as reasonable.

9

*See Katz v. United States*, 389 U.S. 347 (1967) (Harlan, J. concurring); *see also Smith v. Maryland*,

10

442 U.S. 735, 740 (recognizing the two-part *Katz* test from Justice Harlan's concurring opinion).

11

      Twitter is an online social media site whereby its users "tweet" their thoughts.  A "tweet" is

12

a message by a user of Twitter.  A user of Twitter has "followers," which are other users of the

13

Twitter social media site, that may read an individual's thoughts or "tweets."  Plaintiffs argue that

14

Juliano had a reasonable expectation of privacy in his tweets because his tweets were limited to his

15

followers–*i.e.*, a limited audience viewed or read Juliano's tweets.

16

      Twitter provides two privacy settings to its user: public and private.  If a user maintains a

17

public setting, then any of his or her followers may read the user's tweets.  Additionally, anyone

18

searching the internet may view and read a public user's tweets whether or not that person is a

19

follower of the tweeter.  When a user with a public privacy setting tweets a message, he or she

20

intends the message to be heard by the public at large.  It just happens that typically the only people

21

that read the tweet are the users' followers.  A tweet from a user with public privacy settings is just

22

a twenty-first century equivalent of an attempt to publish an opinion piece or commentary in the New

23

York Times or the Las Vegas Sun.  When a person with a public privacy setting tweets, he or she

24

intends that anyone that wants to read the tweet may do so, so there can be no reasonable expectation

25

of privacy.  *See, e.g., United States v. Meregildo*, 883 F.Supp.2d 523, 525 (S.D.N.Y. 2012) ("When

26

a social media user disseminates his postings and information to the public, they are not protected

27

28

1    by the Fourth Amendment."). The only real difference is Twitter will publish almost anything, while

2    newspapers selectively publish opinion pieces.

3      When a user maintains a private setting, then only his or her followers may read the tweet.

4    If a person who is not a follower of a private user's profile searches and finds that private user's

5    profile, that person who searched and found the profile may not read any of the private user's tweets

6    (though there could be an exception for "re-tweeting" that is irrelevant under the facts of this case).

7    A Twitter user with his or her privacy setting set to private has a more colorable argument about the

8    reasonable expectation of privacy in his or her tweets than a user with a public setting. However,

9    even with a private account, the user is still "disseminat[ing] his postings and information to the

10   public, [and] they are not protected by the Fourth Amendment." *Meregildo*, 883 F.Supp.2d at 525.[6]

11     In this case, plaintiffs allege that Juliano maintained a private account.[7] The defendants

12   dispute this contention. At the motion to dismiss stage, the court will accept plaintiffs' factual

13   allegations as true. However, whether Juliano maintained a private Twitter account is irrelevant in

14   this case.

15     Even though Juliano has no reasonable expectation of privacy in his tweets, there was still

16   no Fourth Amendment violation because the school administrators accessed Juliano's tweets via one

17   of his follower's accounts. Plaintiffs argue that defendants violated the Fourth Amendment because

18   they discovered Juliano's tweets when one of Juliano's followers gave the tweets to administrators.

19   However, it is well-established that when a person shares information with a third party, that person

20   takes the risk that third person will share it with the government. *United States v. Choate*, 576 F.2d

21   165, 175 (9th Cir. 1978) ("This Court has repeatedly held that the Fourth Amendment does not

22   prohibit the obtaining of information revealed to a third party and conveyed by him to government

23

---

24     [6] The argument that the user with a private setting has a reasonable expectation of privacy because he had a

25   limited number of followers has nothing to do with his attempts to keep his tweets private, especially if the user has not exercised any discretion with regard to whom may be a follower. Rather, it just means that the majority of the public

26   is indifferent to his thoughts or speech and has not attempted to follow the user's tweets (as is the case with most high school seniors like Juliano).

27     [7] It is not alleged that any of Juliano's tweets were private emails or messages sent to only one friend. Instead

28   it is conceded that any of Juliano's "followers" could read the tweets.

**James C. Mahan**
**U.S. District Judge**

authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."); *United States v. White*, 401 U.S. 745, 751-52 (1971) ("The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government.").

This logic applies with equal force in the social media context.  When a person tweets on Twitter to his or her friends, that person takes the risk that the friend will turn the information over to the government.  *Meregildo*, 883 F.Supp.2d at 526 ("Where Facebook privacy settings allow viewership of postings by 'friends,' the Government may access them through a cooperating witness who is a 'friend' without violating the Fourth Amendment.").

Plaintiffs' causes of action under 42 U.S.C. § 1983 for violations of the Fourth Amendment is dismissed against all defendants.

C.    *Equal Protection*

Plaintiffs assert that defendants violated Juliano's equal protection rights because defendants subjected Juliano to arbitrary and capricious treatment.  (*See* compl. at ¶ 54).  The court dismisses this cause of action without prejudice for the reasons stated *infra*.

For every defendant other than coach Brown, plaintiffs state "that the administrators of Desert Oasis High School acted with deliberate indifference to the likelihood that Juliano Rosario's rights were being violated." (*Id.* at ¶ 58).  That statement serves as the factual basis for an equal protection violation for every defendant other than coach Brown.  This statement contains no specific facts regarding defendants Wozniak, Isaacs, Evans, Gygatz, or Dinkel.  The equal protection cause of action is dismissed without prejudice against these defendants for being wholly conclusory.

Next, it is not entirely clear from plaintiffs' complaint or response to the motion to dismiss whether plaintiffs state a true equal protection claim or a "class of one" equal protection claim.  It is also not clear how the defendants allegedly violated plaintiffs' equal protection rights.  Neither the complaint, nor the response to the motion to dismiss, cogently states whether Juliano belongs to a class (whether a protected class or Juliano specifically as a class of one) that is punished more severely for cyberbullying or whether Juliano (as either part of a protected class or a class of one)

James C. Mahan
U.S. District Judge

- 10 -

1   was treated differently in a basketball context and should have received more playing time.  The

2   court will address all possibilities.

3       "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of

4   the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose

5   to discriminate against the plaintiff based upon membership in a protected class."  *Barren v.*

6   *Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998).  Here, plaintiffs must allege that coach Brown

7   treated Juliano differently because Juliano belonged to a protected class.  The complaint makes no

8   such allegations and therefore cannot state a claim against coach Brown or CCSD for an equal

9   protection violation.

10      Additionally, the complaint must allege that Juliano received harsher discipline under the

11  cyberbullying statute than people not part of the protected class.  The complaint makes no such

12  assertions and therefore fails to state a claim for an equal protection violation.  Plaintiffs do not

13  allege that Juliano belongs to a protected class that defendants purposefully treated differently from

14  people who do not belong to the protected class.

15      The complaint hints, and plaintiffs' response confirms, that plaintiffs are asserting a "class

16  of one" theory.  A plaintiff properly states a "class of one" equal protection claim when he or she

17  alleges that he or she "has been intentionally treated differently from others similarly situated and

18  that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528

19  U.S. 562, 564 (2000).  However, "[t]he class-of-one doctrine does not apply to forms of state action

20  that by their nature involve discretionary decision-making based on a vast array of subjective,

21  individualized assessments."  *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012).

22      Plaintiffs allege that Juliano has stated a class of one claim because coach Brown said Juliano

23  faked an injury, because coach Brown forced Juliano to play intramural basketball in addition to

24  formal tryouts, and coach Brown told other players not to throw bad passes or play bad defense like

25  Juliano.  (*See* compl. at ¶ 54).  Plaintiffs argue that coach Brown did not treat any of the other

26  basketball players the same way, and that Juliano should have received more playing time based on

27  his basketball ability.

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1    These allegations do not state a class of one claim.  As succinctly held by the Sixth Circuit

2    in a case where a basketball player sued a basketball coach under a class of one theory:

3        In making their determinations, coaches simply exercise the broad discretion that typically
         characterizes the coach-player relationship.  To subject run of the mill coach decisions to

4        class of one equal protection challenges would be to expose [ ] athletics to an unprecedented,
         unjustified, and unjustifiable level of judicial oversight.

5

6    *Heike v. Guevara*, no. 10-1728, 2013 WL 1092737, at *10 (6th Cir. March 18, 2013) (per curiam).

7        This logic applies in this case.  Whether Juliano received less playing time because he made

8    bad passes or played poor defense is a highly subjective determination by a basketball coach based

9    on daily observation of practices and games.  A federal court is in no position to determine how

10   much playing time a basketball player should have received.

11       Even if the allegations that coach Brown treated Juliano differently were true, then plaintiffs

12   still have not stated a cause of action.  There is no relief this court could give.  The court cannot force

13   the school to go back and replay the games and give Juliano more playing time.  To the extent that

14   Juliano believes he would have received a scholarship had he played more, the court finds that

15   assertion too speculative.

16       Finally, plaintiffs are challenging Juliano's suspension and then reassignment to a different

17   high school.  The school board disciplined Juliano for statements he made about school officials on

18   Twitter, not because he threw bad passes or played poor defense.  To the extent plaintiff attempts

19   to assert a true equal protection claim or class of one theory based on his treatment solely as a

20   basketball player, he has not alleged or shown any connection how basketball, playing time, or

21   coaching decisions led to his punishment for cyberbullying.  The school administrators punished

22   Juliano for what he tweeted, not for his performance as a basketball player.

23       In sum, plaintiffs's factual allegations and arguments in their response to the motion to

24   dismiss do not state an equal protection claim.  When focusing on equal protection in relation to

25   Juliano's punishment for cyberbullying, plaintiffs have not alleged Juliano belongs to a protected

26   class or that the school administrators punished him more severely under the cyberbullying statute

27   than non-members of the protected class.  When focusing on equal protection (either as a class

28

**James C. Mahan**
**U.S. District Judge**

- 12 -

member or via a class of one) in relation to Juliano's treatment as a basketball player, the plaintiffs have not alleged any connection between Juliano's basketball skills and his punishment for what he tweeted about school officials.  The equal protection claim is dismissed without prejudice against all defendants.

D.      *Violations of 42 U.S.C. § 2000d*

Juliano alleges violations of 42 U.S.C. § 2000d based on recent publications and reports whereby CCSD admitted that it disciplined minority students at a greater rate than white students.

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or actively receiving financial assistance."  42 U.S.C. § 2000d.

Private individuals may sue to enforce sections of Title VI and obtain both injunctive relief and damages.  *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001).  However, it is beyond [ ] dispute . . . that § 604 [of Title VI] prohibits only intentional discrimination."  *Id.*

In this case, plaintiffs do not allege any intentional discrimination in their complaint. Plaintiffs allege that defendants have admitted in announcements and publications that their disciplinary and suspension policies affect minorities at a greater rate than white students.  However, plaintiffs have not alleged that this results from intentional discrimination on the part of anyone connected to the school district.  The plaintiffs have alleged only that defendants admit that it has happened and defendants are investigating the reasons.  Plaintiffs' cause of action for violations of 42 U.S.C. § 2000d is dismissed against all defendants without prejudice.

E.      *Abuse of Process and/or Malicious Prosecution*

In plaintiffs' response to the motion to dismiss, they admit that they have not stated a claim for either abuse of process or malicious prosecution.  The causes of action for abuse of process and/or malicious process are dismissed against all defendants without prejudice.

F.      *IIED*

The elements of an IIED cause of action are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) plaintiff suffered severe

**James C. Mahan**
**U.S. District Judge**

- 13 -

1   or extreme emotional distress; and, (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124,

2   125, 625 P.2d 90, 91-92 (Nev. 1981). "Extreme and outrageous conduct is that which is outside all

3   possible bounds of decency and is regarded as utterly intolerable in a civilized community."

4   *Fernandez v. Penske Truck Leasing., L.P.*, no. 2:12-cv-295-JCM-GWF, 2013 WL 2405297, at *5

5   (D. Nev. May 31, 2013).

6        The complaint does not allege any extreme and outrageous conduct.  The complaint alleges

7   only that certain defendants discovered Juliano's tweets in a manner this court held does not violate

8   the Fourth Amendment.  *See* section III.B. *supra*.  Certain defendants then filled out victim impact

9   statements and disciplined Juliano.  Being disciplined in the form of suspension (which appears to

10  have been later revoked) and reassignment to a different high school is not so extreme and

11  outrageous that it exceeds all possible bounds of decency.

12       Further, neither plaintiff has properly alleged the second required element–severe or extreme

13  emotional distress.  The complaint states only that Frank, but not Juliano, was "caus[ed] anguish and

14  fear."  (*See* compl. at ¶ 77).  No specific facts allege that plaintiffs suffered depression, anxiety,

15  physical manifestations from severe emotional distress, or any type of specific severe or extreme

16  emotional distress that resulted from the incidents alleged in the complaint.  *Beckwith v. Pool*, no.

17  13-cv-125-JCM-NJK, 2013 WL 3049070, at *6 (D. Nev. June 17, 2013); *see Shoen v. Amerco, Inc.*,

18  111 Nev. 735, 747, 806 P.2d 469, 477 (Nev. 1995) (holding that being diagnosed as "situationally

19  depressed" and "receiving psychiatric treatment and taking medication" could establish a genuine

20  issue of material fact regarding severe emotional distress sufficient to survive summary judgment).

21  Plaintiffs cause of action for IIED is dismissed without prejudice.

22       G.    *Defamation and Stigmatization*

23       A plaintiff must plead the following elements in a defamation claim to survive a motion to

24  dismiss: "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an

25  unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual

26  or presumed damages."  *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (Nev.

27  1993).

28

**James C. Mahan**
**U.S. District Judge**

1    Plaintiffs allege that coach Brown stated in a coaches' meeting that Juliano faked an injury.

2    (Compl. at ¶ 80).  This allegation properly states a cause of action for defamation to survive the

3    motion to dismiss stage.  All other allegations are dismissed against all defendants because they do

4    not properly allege each of the elements of defamation.

5         *H.    Civil Conspiracy and/or 1983 Conspiracy*

6    Plaintiffs allege that the defendants conspired together to suspend and discipline Juliano for

7    his tweets.  Defendants argue that plaintiffs have not stated a claim and that the conspiracy claim is

8    barred by the intracorporate conspiracy rule.

9    In Nevada, "[a]n actionable conspiracy consists of a combination of two or more persons

10    who, by some concerted action, intend to accomplish an unlawful objective for the purpose of

11    harming another, and damage results from the act or acts."  *Hilton Hotels Corp. v. Butch Lewis*

12    *Prods., Inc.*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (Nev. 1993) (internal quotations omitted).

13    "To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors,

14    whether explicit or tacit."  *GES, Inc. v. Corbitt*, 117 Nev. 265, 270-71, 21 P.3d 11, 15 (Nev. 2001).

15    "Agents and employees of a corporation cannot conspire with their corporate principal or

16    employer where they act in their official capacities on behalf of the corporation and not as

17    individuals for their individual advantage."  *Collins v. Union Federal Savings & Loan Ass'n*, 99 Nev.

18    284, 303, 662 P.2d 610, 622 (Nev. 1983).

19    To the extent plaintiffs attempt to allege a § 1983 conspiracy while the defendants were

20    acting in their official capacities, then that cause of action fails because it is barred by the

21    intracorporate rule.  The rule bars a cause of action for conspiracy against employees acting in their

22    official capacity.

23    However, plaintiffs have also alleged conspiracy against defendants Dinkel, Brown, Evans,

24    and Gygatz in their personal capacity.  The complaint has properly stated a cause of action against

25    those defendants in their personal capacity because the complaint states a date the defendants

26    conspired, how they conspired, and what they intended to accomplish with the conspiracy.  *See*

27    *Romano v. Bible*, 169 F.3d 1182, 1185-86 (9th Cir. 1999) ("The Supreme Court has made it clear

28

that a plaintiff can establish personal liability in a § 1983 action simply by showing that the official

acted under color of state law in deprivation of a federal right.").

> I.    *Procedural Due Process*

Plaintiffs allege that the defendants violated their procedural due process rights in the way

defendants disciplined Juliano for his tweets.[8]  Defendants argue that the disciplinary proceedings

complied with applicable laws.

The Supreme Court has held the following about procedural due process:

> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.  A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense.  In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.  Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

*Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).

NRS 392.467(2) provides that a student shall not be suspended or expelled until the student

has been given notice of the charges against him or her, an explanation of the evidence, and an

opportunity for a hearing.[9]

Plaintiffs admit all of the following in their complaint: that they met with administrators at

Desert Oasis High School; defendants informed Juliano that defendants intended to discipline

Juliano with cyberbullying for his tweets; plaintiffs appealed his suspension/discipline; both parties

attended and made presentations at an expulsion hearing; and, the panel modified Juliano's

punishment by reassigning him to a different high school. (*See* compl. at ¶¶ 25-29).  The complaint

even states that "Juliano reluctantly accepted this assignment rather than to remain out of school"

(*Id.* at 30).  The complaint makes abundantly clear that Juliano received procedural due process, he

---

[8]  The court agrees with the defendants' characterization that this particular cause of action is largely incomprehensible.

[9]  There is an exception to notice and hearing if the student poses a continuing danger to people or property.

James C. Mahan
U.S. District Judge

- 16 -

just disliked the result.  The complaint has not stated a cause of action and it is dismissed against all defendants without prejudice.

    J.    *Assault and Battery*

    "To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact." *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (quoting Restatement (Second) of Torts, § 21 (1965)).  "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur." *Id.*

    Plaintiff Juliano asserts this cause of action against coach Brown.  The complaint alleges that coach Brown threw a basketball at Juliano's face during drills in practice.  Defendants argue that players consent to certain contact while playing sports.  This is a bad argument in this case.  A basketball player consents to normal physical contact during the course of a basketball game or practice, such as the contact that might occur when blocking out or being blocked out to get rebounds.  Basketball players do not consent to their coaches throwing basketballs at their faces.[10] Juliano has stated a claim that survives the motion to dismiss stage.

    Frank Rosario alleges an assault and battery claim against Gygatz because "Gygatz approached Frank from behind and rubbed him 'shoulder to shoulder' and told him what a class act that was."  (Compl. at ¶ 94).  These allegations survive the motion to dismiss stage.

**IV.    Conclusion**

    In summary, the following causes of action have been dismissed without prejudice against all defendants: (1) violations of the Fourth Amendment[11]; (2) equal protection violations; (3) violations of 42 U.S.C. § 2000d; (4) abuse of process and/or malicious prosecution; (5) intentional

---

[10] *See generally*, edition.cnn.com/2013/04/03/sport/rutgers-video-attack (discussing the firing of a basketball coach for, among other things, throwing basketballs at his players).

[11] Juliano's tweet referenced in section III.A is not protected by the First Amendment and does not survive the motion to dismiss stage.

1  infliction of emotional distress; (6) conspiracy claims against the individual defendants in their

2  official capacity; and, (7) procedural due process violations.

3       The following causes of action remain: (1) First Amendment violations against all

4  defendants; (2) Juliano's defamation claim against coach Brown; (3) the civil conspiracy claim

5  against defendants Dinkel, Brown, Evans, and Gygatz; and, (4) Juliano's assault and battery claim

6  against coach Brown and Frank's assault and battery claim against Gygatz.

7       Accordingly,

8       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to

9  dismiss (doc. # 14) be, and the same hereby, is GRANTED in part and DENIED in part consistent

10 with the foregoing.

11      DATED July 3, 2013.

12

13                                                   _____

14                                                   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 18 -